The points fully presented in other respects the views of the respective counsel on the questions considered by the court.
By the Court.—Sedgwick, J.
The testimony did not tend to show that the defendant was guilty of any of the tortious acts alleged by the complaint. There was no proof of any conspiracy, or threats, or extortion. The case, however, proceeded, down to the charge of the learned court, as if the cause of action on which the plaintiff rested for a recovery was as stated by the complaint, the defendants obtaining the money by the conspiracy, threats, and extortion alleged. In the course of the testimony, it appeared that a former president of the plaintiff had paid to the defendant, who was president of the Central Bank, and for that bank, $5,000. The witnesses had testified that it was *217 paid as a compensation to the Central Bank, for the services of the latter in making clearances through the Clearing-House for the plaintiff. The main witness for the plaintiff was its former president. He testified, in answer to questions put by the counsel for the plaintiff, that the money was paid as compensation, under an arrangement made between the banks. He testified, of his own knowledge, to what it was paid for, although he had had no knowledge of the arrangement at the time it was made. The terms on which the Central Bank was to act at the Clearing-House for the plaintiff had been settled by a former president of the bank. Upon its being assumed that the witness was hostile to the plaintiff, there was given the privileges of a cross-examination. The actual examination was of a kind that is used to destroy the credibility of a witness. The witness having testified to a transaction that would not have made the defendant liable as to the $5,000, he saying that it was paid as compensation to the defendant’ s bank, many questions were put to him, tending to show that he could not explain how the money could have been properly paid as compensation. He was pressed to let the jury know what the services were for which compensation was pretended to be made, and to show how and why it was that the services were not compensated fully by the terms of the arrangement, of which the witness had no knowledge, and which terms, it was assumed, were the whole of the understanding or agreement between the banks.
The burden of proof was upon the plaintiff to show, by credible witnesses, that the circumstances under which the $5,000 were paid gave the plaintiff a right of action. The mere payment did not give a right of action to recover it back. If the cross-examination had successfully shown that the plaintiff’s witness could not make his aqcount consistent with an assumed, or even proved, state of facts, the account must go for *218 nothing, as not shown by a credible witness. But it would be an injustice to a defendant to support an inference that, because the account given by the plaintiff’s witness was not credible, therefore the transaction must have been of a kind that made the defendant responsible. I do not mean to say that the answers given by the witness were inconsistent, but only to determine the utmost effect of the testimony, after supposing that the cross-examination was successful.
The defendant, as a witness, testified that the money was paid to him for the Central Bank, on account of services rendered to the plaintiff. If his account was true, the plaintiff’s bank was indebted to the Central Bank for services. No witness in the case proved that the arrangement between the banks was of such a nature, that the plaintiff was not indebted for services rendered in acting for plaintiff at the Clearing-House. I repeat, the burden of proof was on the plaintiff to show, at least, that the money was not due. The defendant put in evidence a resolution upon the minutes of the plaintiff’s board of directors, in these words: “On motion, the president was authorized to pay W. A. Wheelock, president, $5,000, on account of loan made to this bank, by the Central National Bank.” The defendant swore that he did not know of the terms of the resolution before he received the $5,000, and this was upon the trial assumed to be true. It» is manifest that if he did not then know of the terms, they did not at all contradict his account of the transaction.
The testimony of the only other witness in the case is not of sufficient importance to the merits of this appeal to be stated, especially as he had no knowledge of the relations of the bank before 1869, and the alleged services were principally before that time.
Before the judge charged the jury there had been no intimation that the plaintiff abandoned any part of his complaint, or meant to claim a recovery upon any *219 other ground than of some tort stated in it. He was not bound to make any declaration on that subject, unless required to, in response to some demand of defendants. No such demand was made. But silence, under these circumstances, leaves his claim as he had made it in the complaint, and had used it for the admission of evidence.
The judge charged “that it was not necessary, therefore, that the plaintiff should prove these allegations,” referring to the combination and conspiracy stated in the complaint. “ If it appear upon the complaint that there is enough to show that the defendant has obtained the funds of the plaintiff wrongfully and without consideration, the complaint will be sustained. ’ ’ And ,he further charged, that a party who obtains funds without consideration, with full knowledge of the circumstances under which they have been obtained—knowing where they came from, and that they have been paid over without consideration, becomes liable to answer for those funds, whether he has disposed of them or kept them.” The defendants’ counsel requested the court to charge “ that there is no evidence whatever of any conspiracy, combination or collusion between defendant and any other person, to obtain or extort money from the plaintiff.” To which the court answered: “As to that, I have sufficiently spoken about the question of conspiracy. I cannot charge this request.”
I do not propose to pass upon any exceptions that were made in respect of the matters that have been stated, but have made the statement for the purpose of examining some exceptions that were taken to the admission of testimony.
When the former cashier of the plaintiff was on the stand as plaintiff’s witness, the plaintiff asked this question, “Did you, on January 4, 1870, and on February 1, 1870, deliver to Mr. Callender $3>000 at each *220 date ?” The person named was the Callender mentioned in the complaint as bank examiner. The witness answered that he did, upon the direction of the board of directors. A question was then put, “ Show me any direction of the board of directors to pay that sum.” A resolution was shown “ that the bank pay Charles Cal-lender $6,000 for services rendered this bank, outside of his official duties.” To another question, the witness answered, “ the services varied—-borrowing, money for the bank, helping it through its troubles, going out of his official duty to keep the bank from going into the hands of a receiver.” Several other questions were put on the same subject, one of them to show that Callender was bank examiner at the time.
In this way, the jury had before it an account of a great wrong on the part of Callender, given as evidence against the defendant, after the defendant had objected that it was not evidence at all against him, and was irrelevant 'to the issue.
It certainly was not evidence. Not a jot of evidence was given to connect the defendant with Callender’s misconduct. As irrelevant testimony, it confused the jury in passing upon a case where great discrimination was called for. Given as evidence against the defendant, it- tended to excite sympathy for one side, and animosity to the defendant. And this was the more likely to hurt the defendant as the complaint charged a conspiracy between the defendant and Callender, to obtain money wrongfully from the bank, although the conspiracy charged was of an entirely different character from the offense of Callender, and from first to last, no testimony tended to show that the defendant had conspired as stated in the complaint. And should the case be taken as one where the defendant had received the money wrongfully, so that he was liable for it, although the .wrong was not the wrong stated in the complaint, the defendant would be grievously injured *221 by the recital of such things as evidence against him.
The same injustice was likely to occur as to the $500, although the testimony as to this gives rise to considerations different from those that regard the $5,otib. As to the $500, the judge finally left it to the jury to say whether the testimony given by the defendant on this point, or that of plaintiff’s witness, was true. The former testified that Poole, the former president of plaintiff’s bank, brought the money, and subscribed the amount to the church, as if it were the personal property of Poole himself. Poole testified to what may be here deemed sufficient to show that defendant must have known that it was money belonging to plaintiff’s bank. It was assumed on the trial, at least by the charge that to make the defendant liable for this $500, it was necessary to show that when he received it he knew, or believed that it was the bank’s money. In this conflict the evidence given as to Cal-lender’s misconduct might have turned the scales against the defendant, when the jury was weighing his testimony.
For these reasons I think there should be a new trial, but it is expedient to proceed to some questions based upon the form of the pleadings.
I think it is clear, that in a case where it appears that the agent of a bank, without authority, either because the authority has not been conferred by the bank as a fact, or because the bank has no power under its charter to confer such authority, pays away its money to an officer and agent of another bank for his bank, and such officer knows that there is no authority to pay the money, and that his bank has no right to take it, he is liable personally for the money, whether or not he has paid it over. This is the general rule. The arguments on this appeal did not discuss specifically what were the limitations, or exceptions. It would not, *222 therefore, be satisfactory to decide in the present case what degree of knowledge or belief the agent receiving must have on the subject of the unauthorized payment to make him personally liable, or whether he would be liable if the money were paid to satisfy a claim made ~bona fide, although its character is such that in a case made between the principals it might turn out to be unfounded. Such considerations are the more important -in respect of the $5,000. For I take it to be clear that if the defendant knew that without authority $500 of the plaintiff’s bank had been given to him for a charity, he would be liable, even if he had parted with the money. I do not know that the learned counsel for the respondent maintains that there would be personal liability if the defendant did not know that it was the money of plaintiff.
A plaintiff has therefore the right to allege the special circumstances that create the liability, or allege that the defendant had and received money to the use of the plaintiff, and prove it by the special circumstances. If the special circumstances are alleged they must be proved, and no other special circumstances materially different can be proved to sustain the complaint.
In the present case there was an entire failure to prove the special circumstances alleged as conspiracy and threat, and intent to extort. The allegations are, “ the said defendant, by the means aforesaid and the use of such threat, and without consideration therefor, and with intent to extort money from this plaintiff, did on, &c., obtain from this plaintiff the sum of $5,000.” It is claimed that the unproved allegations may be rejected as surplusage, and there is enough left to make an action. Admitting that such rejection is proper, but not deciding that it is, all that would be left is “ that the defendant, without any consideration therefor, did obtain the money from the plaintiff.” *223 This states no cause of action. It does not state as a fact that the money was received by the defendant for the use of the plaintiff. It would be proved by showing that the defendant, as a bank officer, took money from the plaintiff to be deposited in the bank. In that case there is no consideration given by the bank or the officer acting for it, in the depositing or obtaining. Whatever may be the implications of law in respect of the facts existing, after the obtaining of a deposit, no consideration is necessarily given by the depositary before and upon the “obtaining.” Certain duties arise, but not such as are based upon the existence of a consideration at the time of parting with the money.
The same propositions apply to the allegations as to the obtaining the $500.
On the other hand, I am of opinion that the phrase “and without any consideration therefor” is not severable from the other allegations of the complaint so as to allow it to stand as a substantive statement of the cause of action intended by the pleader. It is really descriptive of the transaction, more specifically described in the other allegations. The statement is, substantially, there was no consideration from the defendant connected with his threat and conspiracy and extortion. This is no notice that the plaintiff relies upon anything but the obtaining by threat, &c.
If this be the true construction of the complaint, the motion should have been granted to dismiss the complaint on the ground “that the complaint is not made out, and that no case whatever has been made against any one, upon the papers.”
Judgment and order appealed from reversed, with costs to the appellant to abide the event of the action.
Van Vorst, J., concurred.